**MONTGOMERY WARD & CO. v.
LAMBERSON et al.**
No. 10378.

Circuit Court of Appeals, Ninth Circuit.
June 30, 1944.

Otto E. McCutcheon, of Idaho Falls, Idaho, and W. B. Powell and W. L. Schoener, both of Oakland, Cal., for appellant.

William S. Holden of Idaho Falls, Idaho, and Walter H. Anderson and Clyde Bowen, both of Pocatello, Idaho, for appellees.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

MATHEWS, Circuit Judge.

At all pertinent times, appellant, an Illinois corporation, operated a retail store in Idaho Falls, Idaho. The store faced west. In front of it a sidewalk ran north and south. The store had four front doors—doors by which it could be entered from the sidewalk. On November 26, 1941, Lydia Lamberson, wife of Chester A. Lamberson,[1] entered the store by one of its front doors, remained about 30 minutes and left by the same door. That door was seven feet from the sidewalk. A ramp[2]

---

[1] The Lambersons are citizens of Idaho.

[2] In the record, the ramp is called by various names—"entrance," "entranceway," "floor," "ramp," "tile," "vestibule," etc.

extended from the door to the sidewalk. The ramp was made of rough tile. It was almost, but not quite, level, being one inch higher at the door than at the sidewalk. Upon leaving the store, Lydia Lamberson slipped and fell on the ramp and was injured. She and her husband, hereafter called appellees, brought an action against appellant for damages in the sum of $25,195, alleging that her injuries were caused by appellant's negligence. Answering, appellant denied that allegation. Jury trial was waived, the case was tried by the court, findings of fact and conclusions of law were stated, and judgment was entered in appellees' favor for $1,945. From that judgment this appeal is prosecuted.

■ Appellees alleged and appellant admitted that Lydia Lamberson entered the store for the purpose of purchasing merchandise from appellant. Therefore she was an invitee, and appellant owed her the duty of maintaining its premises in a reasonably safe condition and of exercising reasonable care to protect her from injury.[3] If appellant violated that duty, it was negligent; otherwise not.[4]

Appellees alleged, in substance, that while Lydia Lamberson was in the store, appellant, by its agents, servants and employees, threw water on the ramp; that the ramp was thereby made wet and slippery and was in that condition when Lydia Lamberson left the store; that by reason thereof, Lydia Lamberson slipped, fell and was injured; that appellant was negligent in throwing water on the ramp, failing to mop the water from the ramp, failing to put ashes or sand on the ramp, allowing the ramp to be in a wet and slippery condition, and failing to warn Lydia Lamberson thereof; and that appellant's negligence was the proximate cause of Lydia Lamberson's injuries. Appellant denied all these allegations.

■ The court did not find, nor was there any evidence from which it could have found, that appellant or any agent, servant or employee of appellant threw water on the ramp, or put or placed any water on the ramp, or caused any water to be on the ramp. The court did find that the ramp had water on it when Lydia Lamberson left the store, and that by reason thereof, Lydia Lamberson slipped, fell and was injured. These findings are supported by evidence and hence are accepted by us as correct.

How the water got on the ramp does not appear. The accident occurred on a bright, sunny day. There was no rain or snow. Lydia Lamberson entered the store about 3 p.m. and left about 3:30 p.m. The ramp was dry—had no water on it—when she entered the store. No one, so far as the evidence shows, saw any water on the ramp prior to the accident. The water had not been on the ramp more than 30 minutes when the accident occurred. It may have been there only a few seconds.

The court did not find, nor was there any evidence from which it could have found, that the fact that the ramp had water on it was known or should have been known to appellant prior to the accident. The court nevertheless concluded that appellant was negligent in permitting the ramp to have water on it, failing to put ashes, sand, salt or matting on the ramp, and failing to notify Lydia Lamberson of the fact that the ramp had water on it— a fact of which appellant itself, so far as the evidence shows, had no notice, actual or constructive.

■ The conclusion was unwarranted, for the rule is that, "In order to impose liability for injury to an invitee by reason of the dangerous condition of the premises, the condition must have been known to the owner or occupant or have existed for such time that it was the duty of the owner or occupant to know of it."[5] In other words, the owner or occupant must have had actual or constructive notice of the dangerous condition. The rule is applicable and has often been applied to cases like the present one—cases in which it was sought to hold a storekeeper liable for injuries sustained by an invitee in slipping and falling on the storekeeper's premises. Some of these cases are cited in the margin.[6] Many others could be cited.

[3] Williamson v. Neitzel, 45 Idaho 39, 260 P. 689; Martin v. Brown, 56 Idaho 379, 54 P.2d 1157; Hall v. Boise Payette Lumber Co., 63 Idaho 686, 125 P.2d 311.

[4] Martin v. Brown, supra.

[5] 45 C.J., Negligence, § 245, p. 837.

[6] F. W. Woolworth Co. v. Williams, 59 App.D.C. 347, 41 F.2d 970; Sears, Roebuck & Co. v. Johnson, 10 Cir., 91 F.2d 332; Campbell v. F. W. Woolworth & Co., 8 Cir., 117 F.2d 152; F. W. Woolworth Co. v. Ney, 239 Ala. 233, 194 So. 667; John Thompson Grocery Co. v. Phillips, 22 Colo.App. 428, 125 P. 563; Brown v. S. H. Kress Co., 66 Ga.App. 242, 17 S.E.

■ In every such case, the plaintiff has the burden of proving that the defendant had actual or constructive notice of the dangerous condition which is claimed to have been the cause of the accident.[7] So here, appellees had the burden of proving that appellant had actual or constructive notice of the fact that the ramp had water on it. The burden was not sustained. It would have been sustained if appellees had proved that appellant, by its agents, servants and employees, put the water on the ramp; for if appellant did that, it necessarily had notice of the fact.[8] But there was no such proof.

■■ Mere proof of the fact that an accident occurred did not shift the burden of proof to appellant,[9] nor did that fact create a presumption that appellant was negligent. Instead, the presumption was, and is, that appellant exercised reasonable care.[10] The doctrine of res ipsa loquitur has no application to the facts of this case.[11]

■■ The duty owing by appellant to Lydia Lamberson was not that of an insurer,[12] but was merely that of maintaining its premises in a reasonably safe condition and of exercising reasonable care to protect her from injury.[13] There was no evidence that appellant violated that duty.

Judgment reversed.

DENMAN, Circuit Judge (dissenting).

The complaint, after describing the slippery tile in the store entrance and plaintiff's entering as an invitee and slipping on the tile while it was wet with water, alleges negligence as follows:

"That the defendant was negligent, careless and heedless in the following particulars, to-wit: In maintaining, allowing and permitting said tile between said door and sidewalk to be in a wet, slippery, slick and dangerous condition, well knowing that customers were required to and did pass over the same and particularly knowing that the plaintiff, Lydia Lamberson, would pass over the same in leaving said store[1] * * *

"That the defendant, through and by its agents, servants and employees were negligent, careless and heedless, in not throwing ashes, or sand, or some other substance upon said *title* [tile] to render the same safe for persons to pass thereover, and particularly with respect to the plaintiff, Lydia Lamberson." (Tr. 5 and 6.)

The district court found such negligence,

---

2d 758; Antibus v. W. T. Grant Co., 297 Ill.App. 363, 17 N.E.2d 610; J. C. Penney, Inc. v. Kellermeyer, 107 Ind.App. 253, 19 N.E.2d 882, 22 N.E.2d 899; Montgomery Ward & Co. v. Hansen, 282 Ky. 188, 138 S.W.2d 357; Powell v. L. Feibleman & Co., La.App., 187 So. 130; Tariff v. S. S. Kresge Co., 299 Mass. 129, 12 N.E. 2d 79; McKeighan v. Kline's, 339 Mo. 523, 98 S.W.2d 555; Thompson v. Giant Tiger Corp., 118 N.J.L. 10, 189 A. 649; Miller v. Gimbel Bros., 262 N.Y. 107, 186 N.E. 410; Pratt v. Great Atlantic & Pacific Tea Co., 218 N.C. 732, 12 S.E.2d 242; S. S. Kresge Co. v. Fader, 116 Ohio St. 718, 158 N.E. 174, 58 A.L.R. 132; Gorman v. Simon Brahm's Sons, 298 Pa. 142, 148 A. 40; DeVelin v. Swanson, R.I., 72 A. 388; Great Atlantic & Pacific Tea Co. v. Logan, Tex.Civ.App., 33 S.W.2d 470; Lundgren v. Gimbel Bros., 191 Wis. 521, 210 N.W. 678.

[7] See cases cited in footnote 6.

[8] Sears, Roebuck & Co. v. Peterson, 8 Cir., 76 F.2d 243; Hatfield v. Levy Bros., 18 Cal.2d 798, 117 P.2d 841; Kellogg v. H. D. Lee Mercantile Co., Mo.App., 160 S.W.2d 838; Westbrook v. Onondaga County, Sup., 36 N.Y.S.2d 494; Saunders v. A. M. Williams & Co., 155 Or. 1, 62 P.2d 260.

[9] F. W. Woolworth Co. v. Williams, supra; Sears, Roebuck & Co. v. Johnson, supra.

[10] F. W. Woolworth Co. v. Williams, supra; Sears, Roebuck & Co. v. Johnson, supra; Powell v. L. Feibleman & Co., supra; Thompson v. Giant Tiger Corp., supra.

[11] F. W. Woolworth Co. v. Ney, supra; Powell v. L. Feibleman & Co., supra; Thompson v. Giant Tiger Corp., supra; Pratt v. Great Atlantic & Pacific Tea Co., supra; Gorman v. Simon Brahm's Sons, supra.

[12] F. W. Woolworth Co. v. Williams, supra; Sears, Roebuck & Co. v. Johnson, supra; F. W. Woolworth Co. v. Ney, supra; John Thompson Grocery Co. v. Phillips, supra; Brown v. S. H. Kress Co., supra; Antibus v. W. T. Grant Co., supra; J. C. Penney, Inc. v. Kellermeyer, supra; Montgomery Ward & Co. v. Hansen, supra; Pratt v. Great Atlantic & Pacific Tea Co., supra; S. S. Kresge Co. v. Fader, supra; Great Atlantic & Pacific Tea Co. v. Logan, supra.

[13] See cases cited in footnote 3.

[1] The complaint alleges further negligence in that the Montgomery Ward Company placed the water in the doorway. This separate negligence was not proved.

stating that at the time Mrs. Lamberson departed from the store,

"* * * the said ramp or entrance-way had water on it, and defendant was negligent in allowing water to be upon and remain on said ramp or entrance-way without any sand, or ashes, or some matting to cover the same.

"That the ramp or entrance-way into the store wherein the plaintiff, Lydia Lamberson, entered at the time of her entrance therein and at the time of her departure therefrom and at the time of her injury was under the exclusive control of the defendant herein." (Tr. 23.)

and further found concerning Mrs. Lamberson's fall and injury when passing over the ramp that "it was due to defendant's negligence, and the absence of any ashes or sand or matting on said ramp or entrance-way, she slipped and fell on the ramp or entrance-way." (Tr. 23.) The allegation of "maintaining" the tiled entrance in a slick and dangerous condition and the finding of "allowing" the water "to be" and remain "there," affirmatively describe a negligent violation of an obligation to the invitee.

The majority opinion not only ignores the finding of negligence and the facts relied upon by the district court in finding negligence, but affirmatively states that the essential facts shown in the record, from which the inference of negligence may be drawn, do not exist.

The majority opinion states, "The court did not find, *nor was there any evidence from which it could have found,* that the fact that the ramp had water on it was known or *should have been known to appellant prior to the accident.*" (Emphasis supplied.) Its sole statement of the evidence on the issue of the appellant's negligence is "The accident occurred on a bright, sunny day. There was no * * * snow." Obviously, since the day was bright and sunny, the comment on the absence of snow must have meant that none remained from a prior snowfall.

The testimony of appellant's store manager, Mr. G. W. Miller, in charge of the protection of such invitees as Mrs. Lamberson, occupies eleven of the few pages—eighty—of the testimony. Mr. Miller vividly describes the snow of a recent snowfall hanging on the copings of the face of

the store, through which Mrs. Lamberson entered, and its melting in the afternoon sun. Mr. Miller frankly concedes his knowledge of its presence by his employment of a sweeper, who, under his orders, several times during the day swept the melting snow water from the sidewalk in front of the building. Following is the evidence, more particularly stated, with citations to the places in the record.

The accident occurred in the afternoon of the 26th day of November, 1941, at the entrance of the westerly face of the store building. There had been a snowfall and Mr. Miller states that snow was lodged on the copings of that face of the building wall and on a box over the awning, both above the entrance where the water caused appellee to slip. The temperature was thawing in the daytime (Tr. 133, 136) and freezing at night (Tr. 85). Mr. Miller stated that while the day was clear, the afternoon's sun on the westerly face of the building caused the snow lodged on the box and copings to melt and the snow water to run down. In this process a lump of snow also fell off and was piled within two feet of the entrance. This condition of thawing required the sweeping of the sidewalk "several times" on the day of the accident, sweeping it "with a broom" "when the snow melted," (Tr. 131) from the box and copings above the entrance.[2] It is obvious that the reason for the absence of water on the ramp when Mrs. Lamberson entered well could have been because the sweeper had just removed it. At about the time of Mrs. Lamberson's injury, it is uncontradicted evidence that the sweeper was sweeping water out (Tr. 103) from one of four similarly ramped doorways (Tr. 133) on the western side of the building, from which the melting snow ran down.

On the day of the accident, and indeed every day, Mr. Miller states he had salt placed on the doorway ramps to prevent anticipated water there from freezing (Tr. 136).

Mr. Miller admitted that in stormy weather the entrance was cleaned out several times a day to keep persons entering from tracking the water into the store (Tr. 138). From this it is a proper inference that appellant knew of the need for similar care on a thawing day with the snow melting

---

[2] The sweeper, Tracy, who was charged with keeping the entrances and sidewalk free of water, was admitted to be at a camp in Arkansas. No reason is given by the appellant why his deposition was not taken.

from the box and copings above and with a lump of snow lodged alongside the entrance, because, similarly, the melting snow would be tracked into or the snow from the pile alongside kicked into the entrance. Indeed, the trial court could have inferred that the water from melting snow, coming down from the box and copings above the entrance, was channeled by the building structure or by a combination of capillarity and gravity directly into the entrance. The undisputed fact is that the water was there and the melting snow just above; that a sweeper was sweeping water from the same or a similar doorway, and it is not even suggested that it came or could have come from any other source.

The trial court well could have inferred that the presence of the melting snow above and next to the entrance constituted a condition dangerous to invitees which was known to the appellant, and created a duty on appellant to protect its invitees from injury therefrom which it was negligence not to perform. Nevertheless, as found by the trial court, appellant did not place any ashes, sand or matting on the floor of the entrance, but, instead, salt to prevent water it anticipated there from freezing.

The trial judge on this evidence had abundant ground for the judgment appealed from. It should be affirmed.